**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

ANGEL CHAVEZ,

     Defendant-Movant,

v.

                                        Nos. CV 21-1195 MV/GJF
                                           CR 20-413 MV/GJF

UNITED STATES OF AMERICA,

     Plaintiff-Respondent.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendant's Sealed Motion to Set Aside His Conviction and Sentence pursuant to 28 U.S.C. § 2255 ("Motion"). CV ECF 1.[1] Defendant alleges that his counsel provided deficient performance for failing to consult him about the possibility of appealing and failing to file a notice of appeal. The United States responded, contending that Defendant waived his appeal rights and did not request that his counsel file an appeal. CV ECF 9 ("Response"). Having reviewed the briefing and the record, and otherwise being fully advised, the Court **RECOMMENDS** that the Motion be **DENIED** for the reasons that follow.[2]

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Charges

On July 3, 2019, a criminal complaint charged Defendant with the sale of 50 grams or more

---

[1] Docket citations referring to Defendant's criminal case, CR 20-413 MV/GJF, will use "CR" before "ECF." Likewise, citations to his civil case, CV 21-1195 MV/GJF, will use "CV" before "ECF."

[2] Before issuing this Proposed Findings and Recommended Disposition ("PFRD"), the Court considered whether an evidentiary hearing was necessary, as instructed by Rule 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. The government's proffers support denying an evidentiary hearing because Defendant's conclusory and unsupported factual allegations about his whereabouts following sentencing fail to raise a genuine factual conflict. *See Hooks v. Workman*, 606 F.3d 715, 730–31 (10th Cir. 2010) (denying a § 2255 hearing because the movant's "general and conclusory . . . allegations fully support[ed] the district court's decision to deny that request"). Because the Motion turns on matters of law and requires no further factual development, the Court concludes that no hearing is necessary.

of methamphetamine and heroin.  CR ECF 1.  At his initial appearance, Defendant requested

appointed counsel, CR ECF 3, and the court appointed Darrell M. Allen.  CR ECF 5 (CJA

appointment).  On February 6, 2020, Defendant pleaded guilty to a felony information, charging

him with several counts of selling 50 grams or more of methamphetamine and heroin, plus

conspiracy.  *E.g.*, CV ECF 22; *see also* CR ECFs 25 ("Plea Agreement"), 65 ("Plea Hearing

Transcript") at 3:18–19.  Per his own admission, between April 8–May 28, 2019, Defendant sold

approximately 16 ounces of methamphetamine and 1.5 ounces of heroin.  *See* Plea Agreement at

¶ 10.

### B.  The Plea Agreement

In relevant part, the Plea Agreement included Defendant's waiver of the right to appeal his

conviction or sentence unless, as he does here, he claims ineffective assistance of counsel.  *Id*. at

¶ 22.  The "Waiver of Appeal Rights" read as follows:

> The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a
> defendant the right to appeal a conviction and the sentence imposed.
> Acknowledging that, the Defendant knowingly waives the right to appeal the
> Defendant's conviction(s) and any sentence, including any fine, at or under the
> maximum statutory penalty authorized by law, as well as any sentence imposed
> below or within the Guideline range upon a revocation of supervised release in this
> cause number.  In addition, the Defendant agrees to waive any collateral attack to
> the Defendant's conviction(s) and any sentence, including any fine, pursuant to
> 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of
> defense counsel's ineffective assistance.

Plea Agreement at ¶ 22; *see also* Mot. at 2.  The Agreement also provided that "[t]he Defendant

has thoroughly reviewed all aspects of this case with [Mr. Allen] and is fully satisfied with [Mr.

Allen's] legal representation."  Plea Agreement at ¶ 1.  Further, Defendant attested that:

> *I have carefully discussed every part of this agreement with my attorney*.  I
> understand the terms of this agreement, and I voluntarily agree to those terms.  My
> attorney has advised me of my rights, of possible defenses, of the sentencing factors
> set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions,
> and of the consequences of entering into this agreement.

*Id.* at 13 (emphasis added).  Mr. Allen signed the agreement too, attesting that:

> *I have carefully discussed every part of this agreement with my client*.  Further, I have fully advised my client of my client's rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  In addition, I have explained to my client the elements to each offense to which [he] is pleading guilty.  To my knowledge, my client's decision to enter into this agreement is an *informed* and voluntary one.

*Id*. at 12 (emphasis added).

### C.  The Plea Hearing

At the plea hearing, after confirming that Defendant understood the nature of the proceedings,[3] the court confirmed the adequacy of Mr. Allen's assistance.  Defendant affirmed that he and Mr. Allen discussed the facts and possible defenses regarding his charges.  *Id.* at 14:20–15:6.  Defendant acknowledged that Mr. Allen spent sufficient time discussing his case with him and that he was satisfied with Mr. Allen's advice and representation.  *Id*. at 15:8–13.  The court also expressly confirmed that Mr. Allen reviewed the Plea Agreement with Defendant "from beginning to end," that Mr. Allen explained "all the parts of [the Agreement]" and "answer[ed] all the parts of it" to Defendant, and that Mr. Allen answered all Defendant's questions "regarding the [P]lea [A]greement."  *Id.* at 15:23–16:6.

Pertinent to the Motion, the court then turned to the "Waiver of Appeal Rights" provision.  After explaining the waiver to Defendant generally, the court asked Defendant whether "[he] read this waiver and discuss[ed] it with [Mr. Allen]," whether Mr. Allen "explain[ed] each and every term of this appellate waiver," whether Defendant "underst[ood] the appellate rights that

---

[3] Defendant also confirmed that he was knowingly relinquishing the right to proceed before a district judge, the right to be charged by a grand jury, the right to trial, and all the rights he would have at trial.  Plea Hr'g Tr. at 2:22–3:25, 5:21–24, 6:8–8:23.  The court explained to Defendant the charges, the minimum and maximum penalties for them, as well as certain civil rights consequences that a conviction may have.  *Id*. at 8:24–9:18, 10:7–11:15.

[Defendant was] giving up," and whether Defendant "understood everything [the judge] explained to [Defendant]." *Id.* at 17:3–19:8.  To each question, Defendant responded affirmatively.  *Id.*

After Defendant pleaded guilty to all counts, *id*. at 19:11–17, the Court accepted his guilty plea, finding that "[he was] competent and capable of entering an informed plea, [he was] aware of the nature of the charges against [him] and the consequences of [his] plea, and that [his] plea [was] knowing and voluntary and supported by sufficient facts." *Id.* at 19:18–22.

### D.  The Sentencing Hearing and Immediate Aftermath

In preparation for sentencing, the Probation Office disclosed its presentence investigation report ("PSR").  CR ECF 44.  Defendant filed objections to the PSR relating to miscellaneous factual findings as well as his eligibility for the safety valve.  CR ECF 47.  He also moved for "Downward Variance from the Applicable Guidelines Sentencing Range."  CR ECF 48.  At sentencing, Senior U.S. District Judge James A. Parker overruled the objections but granted Defendant a substantial downward variance.  Indeed, the court sentenced Defendant to 135 months of incarceration—well below the adjusted Guidelines range.[4]  CR ECF 58 at 3.  The Court filed its judgment on December 10, 2020.  *See* CR ECF 58.

In his Motion, Defendant alleges (without proffering an affidavit or other evidence) that he was hospitalized in the days after his sentencing.  Mot. at 5–6.  He also alleges that, once released from hospitalization, he was transferred between correctional facilities.  Yet Defendant insists that, through it all, he was "attempt[ing] to contact Mr. Allen at his office, and le[aving] voice mail messages [without] receiv[ing] any return call."  Mot. at 6; *but see* Resp. at 7 (revealing Defendant's call log, which shows Defendant making calls every day during his period of alleged

---

[4] The PSR set Defendant's adjusted offense level at 38 and his criminal history category at III.  The PSR recommended a guideline imprisonment range between 292 and 365 months while acknowledging the possibility of a downward variance under 18 U.S.C. § 3553(a)(1)-(7).  CR ECF 44.

hospitalization from only one correctional facility to numbers that are *not* Mr. Allen's).

Meanwhile, Mr. Allen closed his law practice on December 31, 2020.  Resp. at 7.  Until

then, however, his office phone number remained unchanged, and he received calls and voicemails

from people other than Defendant during the time Defendant was supposedly calling him—yet Mr.

Allen lacks any record of missed calls or any voicemails from Defendant.  CV ECF 9-2 at ¶¶ 9–

11 ("I continued to receive phone calls and voicemails at this number . . . . I was able to receive

other voicemails between December 10 and 24, 2020.").  Nor did Mr. Allen have any reason to

suspect that Defendant might need additional assistance.  After all, not only did Defendant receive

a sentence substantially below the guideline imprisonment range, but he also knowingly waived

his right to appeal that sentence.  *Compare* CR ECF 54 at 1 ("The guideline imprisonment range

is 292 to 365 months), *with* CR ECF 58 at 3 (sentencing Defendant to 135 months' incarceration—

much lower than 292 months); *see also* CR ECF 54 at 4 ("The Court finds that pursuant to the Plea

Agreement, the defendant waives the right to appeal the final sentence imposed by this Court,

under 18 U.S.C. 3742(a).").

After allegedly attempting without success to reach Mr. Allen following the sentencing

hearing, Defendant contacted the Office of the Federal Public Defender ("OFPD") on or around

January 29, 2021 (some 50 days after entry of judgment), to inquire about how to appeal.  *E.g.*,

Mot. at 6; Resp. at 7.  The OFPD telephoned Mr. Allen without difficulty.  *See id.*  Mr. Allen

informed the OFPD that he had closed his criminal practice and deactivated his law license,

meaning he was "unable to handle" Defendant's appeal.  *Id.*  On December 10, 2021, exactly one

year after entry of judgment, Defendant filed the instant motion with the help of new CJA counsel.

## II.   STANDARD OF REVIEW

A federal prisoner "may move the court which imposed [his] sentence to vacate, set aside

or correct [his] sentence," when, *inter alia*, "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Such a claim requires the movant to allege that some "error constituted a fundamental defect which inherently result[ed] in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted) (superseded by statute on other grounds). Section 2255 is frequently invoked to complain of ineffective assistance of counsel in violation of the Sixth Amendment.

To obtain relief for ineffective assistance of counsel, "a petitioner must establish both that his attorney's representation was deficient and that he was prejudiced by that deficiency." *E.g.*, *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000) (internal citations and quotations omitted); *accord Strickland v. Washington*, 466 U.S. 668, 687, 688, 692 (1984) (guaranteeing federal criminal defendants the right to "reasonably effective" legal assistance under the Sixth Amendment). To be successful, a movant must show both that his counsel's performance "fell below an objective standard of reasonableness" and that "the deficient performance prejudiced the defense."[5] *Strickland*, 466 U.S. at 668, 687–88. To qualify as "deficient," legal representation "must be outside the wide range of professionally competent assistance. In other words, it must have been completely unreasonable, not merely wrong." *E.g.*, *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010) (internal quotations and citations omitted). A defendant must satisfy both prongs to avoid denial of his motion. *E.g.*, *Kennedy*, 225 F.3d at 1197; *accord Strickland*, 466 U.S. at 688, 692.

During this inquiry, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689); *see also Hooks*, 606 F.3d at 723. Accordingly, counsel

---

[5] For reasons explained *infra*, *Strickland*'s prejudice prong is not subject to meaningful dispute here.

enjoys a "strong presumption [of] effective assistance," and the petitioner bears the burden of overcoming that presumption. *Kennedy*, 225 F.3d at 1197. Carrying this burden of persuasion requires a defendant to establish that the "attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

## III.  DEFENDANT'S ARGUMENTS

Defendant complains of his counsel's alleged ineffectiveness through two separate but related arguments. Defendant first argues that Mr. Allen should have consulted him about filing an appeal, and his failure to do so constitutes ineffective assistance under *Flores-Ortega*.[6] *See* Mot. at 9, 11. He also contends that Mr. Allen's failure to file notice of appeal was a separate instance of ineffective assistance under *Flores-Ortega*. *See* Mot. at 2. Consequently, Defendant requests that the Court set aside his conviction and 135-month sentence. Alternatively, he asks the Court to permit him to file an otherwise-untimely notice of appeal or, at the very least, conduct an evidentiary hearing on his attempts to reach Mr. Allen. *See* Mot. at 19.

## IV.  GOVERNMENT'S RESPONSE

Opposing the Motion, the United States first contends that counsel's *Flores-Ortega* duty remained dormant and not activated. The government emphasizes that Defendant failed to communicate any request to counsel to file a notice of appeal—indeed, the government provides evidence showing that Defendant never attempted to call Mr. Allen. The government also asserts that it was entirely reasonable for counsel to assume that Defendant would not seek to appeal because he had both waived his right to appeal and been reminded of that waiver by the sentencing

---

[6] *Flores-Ortega* imposes on counsel a duty to consult a client about whether to file an appeal when either (1) a rational defendant would want to appeal or (2) this particular defendant reasonably demonstrated to counsel an interest in appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).

judge shortly after he imposed a sentence that was less than half of the low end of the recommended range.  Resp. at 9–11.  The government further argues that, because Defendant has failed to offer any evidence that he actually communicated any request for appeal, Defendant cannot show that Mr. Allen's failure to file a timely notice rises to the level of ineffective assistance.  Resp. at 8–10.

## V.   ANALYSIS

The outcome of this Motion turns primarily on the first prong of the *Strickland* test, which evaluates the reasonableness of counsel's performance.  Here, that prong will be dispositive because the Supreme Court requires district courts to presume prejudice when a defendant forfeits a judicial proceeding entirely.  *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000) (internal alterations and citations omitted) ("The even more serious denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, similarly demands a presumption of prejudice . . . . [W]e cannot accord any presumption of reliability to judicial proceedings that never took place."); *Garza v. Idaho*, 139 S. Ct. 738, 742 (2019) (quoting *Flores-Ortega*, 528 U.S. at 484) ("[W]hen an attorney's deficient performance costs a defendant an appeal that the defendant would have otherwise pursued, prejudice to the defendant should be presumed 'with no further showing from the defendant of the merits of his underlying claims.'").  Under *Flores-Ortega* and *Garza*, therefore, Defendant need only demonstrate that he communicated to his attorney the desire to file a notice of appeal to meet his burden to show prejudice.

### A.  Analysis of Counsel's Performance Under *Strickland*

As explained above, the performance prong requires a defendant to overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)

(quoting *Strickland*, 466 U.S. at 690).  Overcoming this presumption requires establishing that the "attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Richter*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690).

Here, Defendant contends that Mr. Allen's decision not to consult him about filing a notice of appeal and his decision not to file one were "incompete[nt] under prevailing professional norms."  *Id.* (internal citations omitted).  The Court addresses each argument in turn.

1.   Failure to Consult with Defendant about Filing Notice of Appeal

Defendant asserts that his counsel had a duty under *Flores-Ortega* to consult with him about filing a notice of appeal.  Defendant contends that Mr. Allen knew he "disagreed" with several aspects of his sentencing.  Specifically, Defendant alleges that he expressed disagreement with the denial of his eligibility for the safety valve and the finding that he constructively possessed a handgun.  *E.g.*, Mot. at 13.  In Defendant's view, Mr. Allen's awareness of these disagreements, without anything more, triggered a "constitutional[ ] obligat[ion] to advise [Defendant] 'about the advantages and disadvantages of taking an appeal, [including] making a reasonable effort to discover [Defendant's] wishes.'"  *Id.* at 11 (quoting *Flores-Ortega*, 528 U.S. at 480).[7]  Defendant does not specify whether these facts establish that (1) "a rational defendant would want to appeal" or (2) that Defendant in particular "reasonably demonstrated to counsel that he was interested in appealing."  *Flores-Ortega*, 528 U.S. at 480.  Nevertheless, the Court examines whether these arguments satisfactorily trigger either of the *Flores-Ortega* conditions.

---

[7] Defendant also argues summarily that Mr. Allen's duty was triggered because "it was rational in these circumstances for [Defendant] to seek an appeal of his sentence."  Defendant provides no further explanation or development of this argument.  Because "the court will not construct arguments or theories for the [party] in the absence of any discussion of those issues," this argument will not be considered.  *E.g.*, *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

*a. Legal Standard*

In evaluating whether counsel engaged in deficient performance in the context of determining a client's desire regarding an appeal, a district court asks whether consultation between counsel and client occurred and, if not, whether counsel's performance became deficient by forgoing consultation. *See Flores-Ortega*, 528 U.S. at 478.[8]  The latter question turns on whether counsel's duty to consult was triggered.  Under *Flores-Ortega*, counsel's discretion to consult becomes a constitutionally mandated obligation only if there is reason for counsel to think either (1) that "a rational defendant would want to appeal" or (2) that this "particular defendant reasonably demonstrated to counsel an interest in an appeal." *Id.* at 480.  As *Flores-Ortega* noted, this duty flows from the Sixth Amendment because criminal defendants do not always clearly convey their wishes to their attorneys, yet such information is oftentimes critical to providing adequate legal representation. *See id.* at 474–75, 477.

Courts conducting the *Flores-Ortega* analysis "must take into account all the information counsel knew or should have known." *United States v. Orozco-Sanchez,* 804 F. App'x 952, 962 (10th Cir. 2020) (unpublished) (internal quotations and citations omitted).  "All the information counsel knew or should have known" includes inferences available from the defendant's statements or actions. *See, e.g.*, *id.* at 480; *accord Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined . . . by the defendant's own statements or actions[, because c]ounsel's actions are usually based . . . on informed strategic choices made by the defendant and on information supplied by the defendant.").  But "[when] the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal[,] .

---

[8] "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.  If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance."

. . it would be difficult to say that counsel is 'professionally unreasonable.'" *Flores-Ortega*, 528 U.S. at 479 (quoting *Strickland*, 466 U.S. at 691).   Similarly, when "a sentencing court's instructions to a defendant about his appeal rights . . . are so clear and informative as to substitute for counsel's duty to consult," counsel might be reasonable in declining to repeat that information. *Id.* at 480.  Put differently, the *Flores-Ortega* analysis depends not only on counsel's decisions but also the defendant's.

> b.   *Counsel's Duty to Consult with Defendant Never Arose Under* Flores-Ortega

The parties agree that Defendant did not communicate an interest in appeal during the sentencing hearing.  *Compare* CV ECF 9-3 at 1, *and* CV ECF 9-2 (Mr. Allen's declaration that Defendant did not mention any curiosity in appeal at his sentencing hearing), *with* Mot. at 11–14 (describing, instead, Defendant's vocalized disagreement with the Sentencing Guidelines as applied to him).  But whatever else Defendant's disagreement with the Sentencing Guidelines application may have been, it was assuredly not an implicit signal to his counsel that Defendant wanted to discuss a notice of appeal.  No reasonable attorney in Mr. Allen's shoes would have understood Defendant's words at sentencing as a request to appeal or even a request to consult about filing one.  As made clear in the PSR, Defendant already had vast experience in the criminal justice system, including sentencing hearings, and presumably was well aware of the rights afforded to him.  *See* CR ECF 44 at ¶¶ 45-59 (detailing fifteen prior convictions)

Nevertheless, Defendant seeks to convert his complaints about the Sentencing Guidelines into an interest in appeal by referencing the Tenth Circuit's *Herring* decision. *See generally United States v. Herring*, 935 F.3d 1102 (10th Cir. 2019) (emphasis added) (holding that failure to consult *despite a defendant's express request for consultation*

constituted ineffective assistance under *Flores-Ortega*).   That case is of little help, however, because Defendant's conduct at sentencing is materially distinguishable from Herring's.   As Defendant himself acknowledges, "[Herring] *told* his attorney he was interested in appealing."  Mot. at 15 (emphasis added) (internal quotations and citations omitted).   In sharp contrast, Defendant cannot point to anything in the record that establishes he did the same (or anything substantially similar).   Instead, Defendant "informed Mr. Allen that he was *displeased* with several aspects of sentencing."  *Id.*  But nowhere in Defendant's communication is the word "appeal" or any other word that would reasonably suggest an appeal.   The subject matter of Defendant's assertion materially differs from Herring's.

Without communicating a particular interest in considering an appeal, Defendant's mere displeasure with the Guidelines falls short of *Flores-Ortega*'s constitutional threshold.   Thus, given his behavior at sentencing, Defendant has failed to show that counsel's decision not to consult fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 687.  Yet, Defendant still urges the Court to find that he indeed did attempt to communicate an interest in appeal to Mr. Allen.  To that end, Defendant alleges "that [he] attempted to contact Mr. Allen to express precisely this interest after sentencing, [sic] and during the time period for filing a timely notice of appeal."  Mot. at 9.

For its part, the United States notes that Defendant has provided no evidence to corroborate that his attempts to communicate actually occurred—"there is no record that [Defendant] made any request for Mr. Allen to file an appeal."  Resp. at 11.  Moreover, the United States proffered its own evidence that further undercuts Defendant's unsubstantiated allegation.   *Compare* Mot. at 5–6 (alleging—without any affidavit or

corroborative evidence—that Defendant was hospitalized and transferred to another facility during the period he was supposedly seeking to contact Mr. Allen), *with* CV ECF 9-3 (establishing through Defendant's call log that he placed phone calls from the same facility every day he was supposedly hospitalized or in transit, with none of those phone numbers being Mr. Allen's), *and* CV ECF 9-2 (Mr. Allen's declaration that he received no missed call notifications or voicemails from Defendant despite Mr. Allen retaining a functioning phone with the same number and same voicemail capability).

In the absence of any evidence proffered by Defendant, the government's proffered evidence yields only one conclusion: Defendant made no attempt to reach Mr. Allen. *See* CV ECFs 9-2; 9-3. Because Defendant's phone records feature consecutive and almost-daily calls originating from the same facility, the Court is skeptical that he was either transferred to a new facility or taken to a hospital. *See* CV ECF 9-3. Regardless, the evidence before the Court demonstrates that Defendant had ample opportunity to call Mr. Allen during the time period for filing a notice of appeal, both because he had access to a phone and because Mr. Allen's office number remained active and unchanged. CV ECF 9-2. Yet Defendant did not call.

In sum, as the Plea Agreement and Plea Hearing Transcript make clear, Defendant knowingly, voluntarily, and expressly waived his right to appeal. CR ECF 25. And his sentencing proceedings, which were highlighted by the imposition of a substantially shorter term of imprisonment than the PSR recommended, concluded with the sentencing judge reminding Defendant that he had waived his right to appeal. CR ECF 54 at 1; CR ECF 58 at 3. Consequently, based on all of these considerations, the Court concludes that no reasonable attorney in Mr. Allen's position would have consulted with Defendant about a

possible appeal. Indeed, Mr. Allen had ample reason to believe that Defendant—who had

expressly waived his right to appeal and had just been reminded of the waiver—did not

intend to appeal, and that a reasonable person in Defendant's position would not seek to

appeal either. Under these circumstances, counsel's conduct does not qualify even as

"merely wrong," let alone "completely unreasonable." *Workman*, 606 F.3d at 723. The

Court concludes that Defendant has not overcome the presumption that Mr. Allen's

conduct in not consulting about a possible appeal was within the bounds of prevailing

professional norms. *See Richter*, 562 U.S. at 105.

### 2. Failure to File a Timely Notice of Appeal

Defendant alternatively argues that counsel's performance was deficient because he failed

to file a notice of appeal despite (a) "[Defendant's] evident disagreement with multiple contested

sentencing factors during the sentencing hearing," and (b) Defendant's allegedly demonstrated

desire to file notice of appeal within the applicable fourteen-day window. Mot. at 8–9. These

arguments leave the Court unpersuaded.

#### a. Legal Standard

As stated above, "a petitioner must establish both that his attorney's representation was

deficient and that he was prejudiced by that deficiency." *Strickland*, 466 U.S. at 687. The Supreme

Court expressly rejected the proposition that counsel must file a notice of appeal absent express

instruction to the contrary because such a per se rule is inconsistent with *Strickland* and its progeny.

*Flores-Ortega*, 548 U.S. at 478. Deficient performance in this context occurs only when the

lawyer ignores the defendant's express instructions or, absent express instruction, fails to draw a

reasonably obvious circumstantial inference that the defendant sought to appeal. *See Garza*, 139

S. Ct. at 750 (emphasis added) (deficient performance from "fail[ure] to file a notice of appeal

*despite the defendant's express instructions*"); *Flores-Ortega v. Roe*, 39 F. App'x 604, 605 (9th Cir. 2002) (holding on remand that Flores-Ortega "reasonably demonstrated an interest in filing an appeal" based on circumstantial evidence—a note that Flores-Ortega's trial counsel wrote to herself during a sentencing hearing). A defendant seeking to prove deficient performance "can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal." *Flores-Ortega*, 528 U.S. at 486.

> b. *Counsel's Failure to File Notice of Appeal Was Reasonable Given Defendant's Conduct*

Neither party disputes that Mr. Allen did not file a notice of appeal. Defendant argues that this failure is deficient performance analogous to that in *Flores-Ortega*, *Garza*, and *Herring*. But those cases are immediately distinguishable for a single reason: unlike here, each of those cases involved defendants who reasonably communicated their interests in appeal.

In *Flores-Ortega*, following remand and a subsequent appeal from the trial court, the Ninth Circuit determined that Flores-Ortega expressed his appellate wishes to his attorney based on circumstantial evidence.[9] In *Herring*, the Tenth Circuit had the benefit of affidavits establishing strong circumstantial evidence that Herring asked his trial counsel for appellate assistance. *Herring*, 935 F.3d at 1106. And in *Garza*, the record established that Garza expressly instructed his counsel to appeal. *Garza*, 139 S. Ct. at 750 (emphasis added) (concluding that counsel engaged in deficient performance for "fail[ing] to file a notice of appeal *despite the defendant's express instructions*"). In each case, the respective defendant established deficient performance through

---

[9] In *Flores-Ortega*, the Supreme Court issued its opinion without the benefit of a record explaining the extent to which Flores-Ortega requested appellate assistance. *Flores-Ortega*, 528 U.S. at 487 (remanding to determine whether counsel's handwritten note, which read "bring appeal papers," in her trial files, sufficed to show trial counsel received an oral request to file a timely notice of appeal); *but see Flores-Ortega v. Roe*, 39 F. App'x 604, 605 (9th Cir. 2002) (holding on remand that the note strongly implied that the defendant issued a reasonably clear directive to his counsel regarding appeal). The Ninth Circuit reasoned that she would not have written the note "bring appeal papers" on the front of Flores-Ortega's PSR unless he "had demonstrated an interest" in appeal. *Roe*, 39 F. App'x at 605–06.

"evidence that [he] sufficiently demonstrated to counsel [his] interest in an appeal." *Flores-Ortega*, 528 U.S. at 486.

Here, Defendant invokes the same argument without the benefit of similar evidence or, indeed, without proffering any evidence at all.  *See generally* Mot.  Although longstanding precedent holds that a lawyer disregarding "specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable," the cases require "specific instructions" or something extremely close to them.  *Id.* at 477 (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)).  In this case, Defendant gave Mr. Allen neither.  As explained above, nothing in the record indicates Mr. Allen received "specific instructions," nor can Defendant's sentencing guideline displeasure reasonably be construed as implicitly communicating a desire to appeal. Plus, the relevant contextual circumstances suggest that Defendant would not seek to appeal—his sentence being well below the guidelines range and his valid waiver precluding challenge to that sentence.  So without offering any evidence of either an express directive or reasonably sufficient circumstantial clues, Defendant has provided the Court with no basis to construe Mr. Allen's failure to file a notice of appeal as professionally unreasonable.  Given that "the decision whether to appeal . . . rest[s] with the defendant," Defendant must account for the consequences of failing to reasonably communicate with Mr. Allen.  *Id.* at 485.

### B. Prejudice

Because Defendant failed to show that his attorney's conduct was unreasonable, he has failed to carry his burden under the first *Strickland* prong.  Thus, the Court has no occasion to evaluate prejudice, actual or presumed.

## VI.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion be

16

**DENIED** and this case be **DISMISSED WITH PREJUDICE.**

   **SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**